UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN BETANCOURT,<br><br>   Plaintiff,<br><br>   v.<br><br>ADVANTAGE HUMAN RESOURCING, INC.,<br><br>   Defendant. | Case No. 14-cv-01788-JST<br><br>**ORDER DENYING MOTION TO DISMISS** |

In this putative class action for unpaid wages and related claims, Defendant Advantage Human Resourcing, Inc. ("Advantage") moves to dismiss Plaintiff Betancourt's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion to dismiss is DENIED.

I.   **BACKGROUND**

   A.   **Betancourt's Claims**[1]

Defendant Advantage is a temporary staffing agency. Compl. ¶ 14. As with many other temporary agencies, Advantage interviews prospective workers, sends them to a "new hire" orientation, has new hires sign a form that acknowledges that the parties are entering into an employment arrangement, and requires them to complete traditional employment paperwork, including W-4 and I-9 forms. Id. ¶¶ 17-20. Upon becoming an Advantage "employee," a person becomes eligible to interview for positions with Advantage's clients. Id. ¶ 22.

Advantage controls the manner in which temporary workers interview with clients. Id. ¶ 16. Advantage decides which workers interview with which clients, and sets the dates and places

---

[1] The Court accepts the allegations in the Complaint and supporting documents as true for the purpose of resolving this motion. See Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).

of the interviews. Id. ¶ 23. Advantage also modifies its temporary workers' resumes to display only Advantage's contact information. Id. ¶ 24. In addition, Advantage forbids its workers from ever directly contacting its clients. Id. ¶ 26.

If, after an interview, the client wishes to hire the worker, Advantage negotiates the terms, conditions, and salary of the client-worker relationship. Id. ¶ 25. If the client does not hire the temporary worker, Advantage retains sole discretion to send that worker to another client. Id. ¶ 27.

Betancourt underwent Advantage's hiring process in late 2011. Id. ¶ 31. After Betancourt successfully interviewed with Advantage and signed an employment agreement, Advantage directed Betancourt to interview with UTLS Default Services, LLC ("UTLS"), one of Advantage's clients. Id. ¶ 32. Before the interview, Advantage altered Betancourt's resume to show only Advantage's contact information. Id. ¶ 33. The interview lasted one hour. Id. ¶ 37. After the interview and as Advantage required, Betancourt called Advantage to report how the interview went. Id. ¶ 34. Subsequently, Advantage acted as intermediary between Betancourt and UTLS, calling to inform him of his success at the interview, as well as of his pay rate and start-date. Id. ¶¶ 34, 35.

Betancourt completed his assignment with UTLS and terminated his employment with Advantage shortly thereafter by failing to keep in touch with Advantage about possible new assignments. Id. ¶ 36.

Betancourt now makes the following allegations on behalf of himself and members of the putative class: (1) he was an Advantage employee during his interview with UTLS, and the interview was work time for which he was never paid, in violation of California Labor Code § 1194(a)[2]; (2) Advantage violated § 226(a) by failing to provide Betancourt with accurate wage statements; (3) Advantage failed to pay Betancourt his due hourly wage for the UTLS interview in violation of § 223; (4) Advantage failed to pay Betancourt for his interview with UTLS upon his termination in violation of §§ 201, 201.3, 202 and 203; and (5) Advantage violated California

---

[2] All statutory references hereinafter are to the California Labor Code, unless noted otherwise.

Business & Professions Code § 17200 *et seq.* by failing to pay Betancourt for the interview.

B. **Jurisdiction**

Because Betancourt alleges that the putative class meets minimum-diversity and amount-in-controversy requirements, the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d). Id. ¶ 5.

II. **DISCUSSSION**

A. **Legal Standard**

"A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

On a motion to dismiss, courts accept the material facts alleged in the complaint, together with reasonable inferences to be drawn from those facts, as true. Navarro v. Block, 250 F.3d 729, 732 (9th Cir.2001). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To be entitled to the presumption of truth, a complaint's allegations "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir.2011).

In addition, to survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

B. **Analysis**

This motion poses two simple questions: First, was Juan Betancourt Advantage's

3

employee when he interviewed with Advantage's client, UTLS?  Second, if he was an employee, was the activity of interviewing compensable "work"?  If the answers to these questions are both affirmative, then Betancourt's complaint states a claim for compensation under § 1194.  If the answer to either question is negative, his complaint fails.

### 1. The Employer-Employee Relationship

The first question is whether Betancourt was Advantage's employee during his interview with UTLS.  Wage Order No. 4-2001 defines "employee" as "any person employed by an employer."[3]  Cal. Code Regs., tit. 8, § 11040 ("Wage Order 4"); Compl. ¶ 49.  "Employer" is defined as "any person . . . who . . . employs or exercises control over the wages, hours, or working conditions of any person."  To "employ" is to "engage, suffer, or permit to work."  In aggregate, these definitions give "employ" three alternative meanings: (1) to exercise control over wages, hours, or working conditions; (2) to suffer or permit to work; or (3) to "engage," i.e., to create a common law employment relationship.  Martinez, 49 Cal. 4th at 64.  Plaintiff argues that Advantage was his employer under any of these tests.

#### a) Prior case authority

Two district courts have already examined these issues on materially identical facts, but reached opposite conclusions.  Sullivan v. Kelly Servs., Inc., No. C 08-3893 CW, 2009 WL 3353300 (N.D. Cal. Oct. 16, 2009) (holding an employment relationship was created and that "work" time was compensable); Gunawan v. Howroyd-Wright Empl. Agency, No. SACV 13-01356-CJC, 2014 WL 539907 (C.D. Cal. Jan. 30, 2014) (holding that an employment relationship was not created, and time alleged as "work" was not compensable).

In Sullivan, plaintiff was a worker who applied for employment with a staffing agency, Kelly Services, Inc.  2009 WL 3353300 at *1.  Sullivan sought compensation for time spent interviewing with Kelly's customers as a potential temporary worker.  Id.  During her tenure with Kelly, Sullivan interviewed with four different clients.  Id.  Plaintiff's agreement with Kelly

---

[3] Wage orders issued by the Industrial Welfare Commission control § 1194 actions for unpaid wages, Martinez v. Combs, 49 Cal. 4th 35, 64 (2010), and the parties agree that Wage Order No. 4-2001 governs this claim.

4

provided explicitly that her employment with Kelly did not begin until "the first day of [her] my first position" with one of Kelly's clients. Id. Perhaps for that reason, Plaintiff sought compensation only for the three interviews she had conducted after she had already begun working for Kelly's customers, but not for the interview which led to her first assignment. See id. (finding that "Plaintiff's employment relationship with Defendant began on March 16, 2006, which was her first day of her first temporary assignment with Defendant's customer, Managed Health Network.").

The Sullivan court, on a motion for summary judgment, found that Sullivan was an employee of Kelly during the customer interviews under both the "control" and "suffered or permitted to work" tests.[4] On the question of control, the Sullivan court pointed to the following facts:

> Plaintiff was subject to Defendant's control during the time she attended the customer interviews. Defendant controls all communications with its customers regarding potential assignments for temporary employees, outside of the interview itself. Defendant decides which of its temporary employees to send on an interview. Defendant then sends the customer a résumé with Defendant's name on it. Defendant removes the temporary employee's contact information from the résumé and replaces it with its own to ensure that its customers can only contact it about the placement. Further, Defendant arranges the interview and restricts a temporary employee's communication with the customer so that only Defendant can arrange the time, place and date of the interview. If a temporary employee is running late to an interview, he or she must contact Defendant to relay that information to the customer. After interviews, Defendant controls all follow-up communication with the customer. Employees are not allowed to have any direct communication with the customer about the interview, salary or any terms of a possible assignment offer.

Id. at *4. Based on these facts, the Sullivan court concluded that Kelly "exerted a high level of control over Plaintiff's interviews with Defendant's customers." Id. at *5.

The Sullivan court also concluded that plaintiff satisfied the "suffered or permitted to work" test because Kelly Services knew that Sullivan spent time interviewing with Kelly's customers, arranged the interviews, and directed Sullivan how to prepare for the interviews, and

---

[4] The Sullivan court did not consider whether the "engage" test was satisfied.

5

Kelly employees debriefed her following the interviews. Id. at *6. The interviews were also "an opportunity [for Kelly] to market its staffing services to the customers with whom Plaintiff interviewed." Id. at *6. Having found that Sullivan was both under Kelly's "control" and "suffered or permitted to work" during the time related to customer interviews, the Sullivan court held that Sullivan was entitled to compensation for the time she spent interviewing with Kelly's customers. Id. at *7.

In Gunawan, the plaintiff also signed up with a temporary staffing agency, defendant KForce, Inc. As was true in Sullivan and as is alleged here, the staffing agency first conducted its own interview with Gunawan, then invited Gunawan to interview with one of KForce's clients, TRG. 2014 WL 539907 at *1. Gunawan subsequently went to work at TRG, but as an employee of KForce. Id. As with Sullivan and the present case, KForce restricted communications between Gunawan and TRG, modified Gunawan's resume to include its own name and contact information, and set the time and place of Gunawan's interview. Id. at *4. The only fact that was different from Sullivan – but identical to the fact in the present case – was that the interview with TRG was Gunawan's first interview for KForce.

The Gunawan court concluded on these facts that Gunawan was not an employee of KForce during the TRG interview, and the time spent in the interview was not compensable. Id. The court looked primarily at the question of control, and concluded that KForce did not exercise sufficient control over Gunawan: had Gunawan wanted to, the court said, she could have simply declined the interview. Id. As to KForce's control over Gunawan's communications with TRG, the court found that, if Gunawan "did not want KForce to modify her resume or act as an intermediary between herself and TRG, she could [] simply have refused KForce's placement service, and instead, attempted to secure a position with TRG through her own efforts." Id. Finally, the court both disagreed with the holding in Sullivan, and distinguished it on its facts, since the plaintiff in that case had already become an employee of the staffing agency at the time she participated in her second, third, and fourth interviews with agency clients. Id. at *6.

This Court finds Sullivan to be the more persuasive case, and declines to follow Gunawan. As set forth below, the Court concludes that Betancourt has adequately alleged both his

6

employment status with Advantage and the compensable nature of the time spent interviewing with UTLS.[5]

### b) Betancourt adequately alleges an employment relationship with Advantage

As noted above, in order to prevail on his claim that he was an Advantage employee at the time of the UTLS interview, Betancourt must allege facts that show: (1) Advantage exercised control over his wages, hours, or working conditions; (2) Advantage suffered or permitted Betancourt to work; and/or (3) Betancourt and Advantage established a common law employment relationship.

#### (1) Control over wages, hours, or working conditions

Betancourt has alleged facts that tend to show Advantage controlled his hours and working conditions at the time he interviewed with UTLS. For example, Betancourt alleges that Advantage identified the potential hiring entity, and organized the date, time, and place of the interview. Compl. ¶¶ 23, 25, 32. Betancourt also alleges that Advantage tightly controlled the flow of information between UTLS and Betancourt before and after the interview, as evidenced by Advantage's modification of Betancourt's resume and its prohibition on workers' communication with clients. Id. ¶ 33-35. As did the Sullivan court, this Court finds that Advantage exercises a high degree of control over the wages, hours, and working conditions of the interview, such that this test is met.

Advantage argues that the test is not met because Advantage did not control Betancourt's actions during the time he was actually *at* the interview. ECF No. 12 at 10. "There is no allegation that Advantage set any wages or working conditions for the interview time." Id. This argument is not persuasive. Even if Advantage was not present at the interview, it still exercised the lion's share of control over it. And the only reason Advantage did not "set any wages" is that

---

[5] Advantage emphasizes what it describes as the distinguishing characteristic of the Sullivan case, i.e., that the plaintiff in that case "had a long-term relationship with the staffing agency in question, and had already performed assignments (i.e., actual work)." ECF No. 18 at 3. But Advantage fails to explain, and the Court is unable to see, why that distinction makes any difference. If time spent interviewing is compensable work, a temporary worker is just as entitled to be paid for her first interview as for her second.

it did not consider whether any were due and owing.

### (2)    Suffering or permitting to work

The second test is whether Advantage suffered or permitted Betancourt to work. To "suffer" or "permit" work to be performed is to have knowledge, real or constructive, of the work being done. Martinez, 49 Cal. 4th at 69-70. The essence of this test is the idea that an employment relationship exists if an entity knows or should know that an individual is doing work, yet fails to prevent the individual from working. Id. For the purposes of this definition of employment, Advantage cannot dispute that it knew Betancourt would interview with UTLS—Advantage arranged the interview.[6] Thus, the Court concludes that Betancourt's allegations meet this test.

### (3)    Common law employment relationship

The third test is whether Betancourt and Advantage developed a common law employment relationship. The key factor in the common law employment test is "control of details." Futrell v. Payday Cal., Inc., 190 Cal. App. 4th 1419, 1434 (2010). Other factors to consider are: (1) whether the worker engaged in a distinct occupation or business; (2) whether, considering the kind of occupation and locality, the work is usually done under the alleged employer's direction or without supervision; (3) the skill required to do the work; (4) whether the employer or the worker supplied the instrumentalities, tools, and place of work; (5) the length of time the worker's services are to be performed; (6) whether payment is by time or by job; (7) whether the work is part of the employer's regular business; and (8) whether the parties believe they are creating an employer-employee relationship. Id.

Betancourt has alleged enough facts to make his claim of "employment" plausible under a common law theory. Betancourt alleges that Advantage selected UTLS as the interviewing entity; set the time, place, and date of the interview; prohibited any communication between Betancourt and UTLS outside of the interview; altered Betancourt's resume in anticipation of the interview;

---

[6] Advantage contends that an interview is not "work" and therefore it does not matter what Advantage knew. ECF No. 12 at 10; ECF No. 18 at 8. The Court addresses this contention below.

1   and required Betancourt to communicate with Advantage after the interview regarding its
2   substance.  As stated above, these allegations, taken as true, suggest that Advantage exercised
3   control over the details of Betancourt's interview with UTLS.
4         Betancourt does not address some Futrell factors.  He does not clearly allege that he
5   engaged in a distinct occupation or business; whether, given the kind of occupation and locality,
6   workers are usually subject to the alleged employer's direction or whether they work without
7   supervision; the skill required to perform the work he performed for Advantage; whether
8   Advantage provided the instrumentalities, tools, and place of work; or the length of time for which
9   Advantage sought his services.  But he has alleged facts that support several of the other
10  employment factors.  Betancourt alleges that he worked for Advantage on an hourly basis.
11  Compl. ¶ 37.  Additionally, Betancourt alleges that the very "lifeblood" of Advantage's business is
12  having its workers successfully interview with clients, just as Betancourt did with UTLS, and thus
13  that the work he performed for Advantage was part of Advantage's regular business.  Id. ¶¶ 14, 15.
14  Finally, Betancourt alleges that Advantage required him to sign a form acknowledging the parties'
15  employment relationship before Betancourt interviewed with UTLS, which clearly supports the
16  notion that both Betancourt and Advantage understood they were creating an employment
17  relationship.[7]  Id. ¶¶ 21, 31.
18        Betancourt does not have to satisfy every factor in order to establish an employment
19  relationship; the court evaluates the parties' relationship holistically.  Arnold v. Mutual of Omaha
20  Ins. Co., 202 Cal. App. 4th 580, 590 (2011).  In total, Betancourt has alleged facts that, if taken as
21  true, would show he was an Advantage employee during his interview with UTLS.

22        **2.    The Interview with UTLS as Compensable Work Time**

23        Having concluded that Betancourt adequately alleges an employment relationship, the
24  Court next turns to the question of whether the time Betancourt spent interviewing was
25  compensable "work."  Advantage argues that, even if it shared an employer-employee relationship
26  with Betancourt at the time of the UTLS interview, the interview was still not "work."  ECF No.

---

[7] Had Advantage wanted the employment relationship to begin only after a client hired Betancourt, it could have expressly stated so in its form.  See Sullivan, 2009 WL 3353300 at *1.

12 at 13.

Wage Order 4 defines "hours worked" as "the time during which an employee is subject to the control of an employer." Cal. Code Regs., tit. 8, § 11040(2)(K). This includes "the time the employee is suffered or permitted to work . . . ." Id. The allegations in the Complaint satisfy this test, as this Court has already found that Betancourt was under Advantage's control during his interview with UTLS.

Advantage suggests an alternative definition of "work" from Black's Law Dictionary, ECF No. 12 at 13 (citing Black's Law Dictionary 1742 (9th ed. 2009) (defining "work" as "mental exertion to attain an end, especially as controlled by and for the benefit of an employer")), but Betancourt's allegations satisfy that definition also. Plaintiff clearly alleges that the interviews are conducted for Advantage's benefit, since the purpose of the interviews is to promote temporary staffing relationships, which in turn provide Advantage's revenue stream. See Compl., ¶¶ 14 ("Defendant is a temporary employment agency whose business is dependent upon successfully placing its employees on assignments with its clients"), 15 ("[t]he interviews arranged by Defendant between its employees and its clients are essential to a successful job placement and paramount to the success of its business").

In support of its argument that the UTLS interview was not "work," Advantage relies heavily on the Enforcement Policies and Interpretations Manual published by the Division of Labor Standards Enforcement ("Manual" and "DLSE," respectively).[8] See ECF No. 12 at 10-13; ECF No. 18 at 11. The specific DLSE policy Advantage relies upon states that "try-out" time is non-compensable. ECF No. 13-1 at 184. Try-out time includes "situations where an employer may wish to have a prospective employee exhibit skills such as typing, shorthand, or operation of machinery . . . ." Id.

---

[8] Although a court's review on a motion to dismiss is generally limited to the allegations in the complaint, Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001), courts may take judicial notice of relevant matters in the public record. Fed. R. Evid. 201(b); see, e.g., Castillo-Villagra v. INS, 972 F.2d 1017, 1026 (9th Cir. 1992). Advantage asks the Court to take notice of the Manual, which is publicly available. ECF No. 13 at 2. The DLSE enforces California's labor laws, including those at issue here, and its interpretations and policies regarding matters before the Court are therefore relevant. Advantage's request for judicial notice is GRANTED.

Even if the Manual were persuasive authority, see Becerra v. Radioshack Corp., No. 4:11-CV-03586 YGR, 2012 WL 6115627 at *4 (N.D. Cal. Dec. 10, 2012) ("California courts have held repeatedly that DLSE's interpretations within the [Manual] . . . are not entitled to deference"), it does not support Advantage's argument regarding the definition of work time. The Court recognizes that a typical employment interview is not compensable work time. If Betancourt's complaint was based on his initial interview with *Advantage*, he might have difficulty stating a claim. At the time of that interview, he was not Advantage's employee, and both he and Advantage were deciding whether to establish an employment relationship. Perhaps that interview fell within the definition of "try-out" time in the Manual.

But the interview with UTLS was not a typical pre-employment interview. At the time of the UTLS interview, Betancourt alleges that he was already Advantage's employee, performing a task – interviewing with an Advantage client – that his employer required. In other words, the interview was part of his responsibilities as an Advantage employee. Betancourt has sufficiently pled facts that, if taken as true, show that his interview with UTLS was compensable "work" under Wage Order 4's definition.

### C. Plaintiff's Remaining Claims

Advantage's motion to dismiss Plaintiff's remaining claims is based entirely on the premise that those claims are derivative of Plaintiff's claim under § 1194. ECF No. 12 at 3, 14. Because the Court concludes that that claim is adequately pleaded, the balance of Advantage's motion must be denied.

## III. CONCLUSION

For the foregoing reasons, Advantage's motion to dismiss is DENIED.

**IT IS SO ORDERED.**

Dated: September 3, 2014

_____
JON S. TIGAR
United States District Judge