UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN BETANCOURT,<br><br>    Plaintiff,<br><br>v.<br><br>ADVANTAGE HUMAN RESOURCING, INC.,<br><br>    Defendant. | Case No. 14-cv-01788-JST<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND FOR CERTIFICATION OF SETTLEMENT CLASS**<br><br>Re: ECF No. 33 |

Before the Court is Plaintiff's[1] unopposed motion for preliminary approval of the settlement and for certification of the settlement class. ECF No. 33-1. For the reasons discussed below, the Court will GRANT the motion, conditionally certify the settlement class, appoint class counsel and the class representative, direct the distribution of class notice, and preliminarily approves the parties' settlement agreement.

I.  **BACKGROUND**

    A.  **Factual Background**

Defendant Advantage Human Resourcing, Inc. is a temporary employment agency that places candidates with its clients. ECF No. 1 ¶ 14. Advantage interviews prospective workers, sends them to "new hire" orientation, has new hires sign a form that acknowledges that the parties are entering into an employment arrangement, and requires them to complete traditional employment paperwork, including W-4 and I-9 forms. Id. ¶¶ 17-20. Advantage then sends

---

[1] Juan Betancourt is the only named Plaintiff in this action, however, Plaintiff's counsel state that two putative class members, Edgar Minor and Johnny Quesada, have also assisted in the litigation. ECF No. 33-1 at 3. The present motion refers to Plaintiff Betancourt, Mr. Minor, and Mr. Quesada as "Plaintiffs" collectively. Id. at 3 n.2. However, because Mr. Minor and Mr. Quesada are not named in the complaint, and have not been added as named plaintiffs, this Court will refer only to Plaintiff Betancourt's claims on behalf of the putative class.

eligible candidates to interview for temporary employment with its clients.  Id. ¶ 22.

Plaintiff Juan Betancourt ("Plaintiff") completed Advantage's intake and orientation process and agreed to become an Advantage temporary employee in late 2011.  Id. ¶ 31.  Advantage then sent Plaintiff to interview with one of its clients and complete additional materials for a temporary position.  Id. ¶ 32.  Plaintiff was not compensated for the time he spent interviewing with Advantage's client.  Id. ¶ 37.

### B.     Procedural History

On April 17, 2014, Plaintiff brought this putative class action against Advantage, on behalf of former California-based temporary employees who were not compensated for the time they spent interviewing with Advantage's clients.  Because Advantage maintained complete control over all aspects of the interview process, Plaintiff argues that Advantage's failure to compensate its employees for the time spent participating in interviews and orientation for Advantage's clients violates the California Labor Code and California Business & Professions Code.  Plaintiff asserts the claims for violations of all of the following:  (1) California Labor Code sections 1924(a) and 1198 for failure to pay wages; (2) California Labor Code section 226(a) for failure to provide accurate wage statements; (3) California Labor Code sections 201-203 for failure to pay timely wages at termination; (4) California Labor Code sections 222 and 223 for failure to pay Plaintiff's due hourly wage; and (5) California Business & Professions Code section 17200, *et seq.* for failure to pay for the interviews.  Id.  Plaintiff seeks damages, penalties, restitution, and other equitable relief.  Id.

Advantage filed a motion to dismiss on May 14, 2014.  ECF No. 12.  The Court denied the motion on September 3, 2014, concluding that Plaintiff adequately alleged his employment status with Advantage and the compensable nature of the time spent interviewing with Advantage's clients.  ECF No. 24.

The parties subsequently participated in a full-day mediation on November 11, 2014, with Susan Haldeman, Esq., a class action and wage-and-hour mediator.  ECF No. 33-1 at 9.  The parties agreed to material terms of the proposed settlement that is subject to the present motion.  Id.  Prior to the mediation session, Plaintiff's counsel engaged in both formal and informal

2

discovery, including the exchange of interrogatories, requests for production, and requests for admissions. Id. at 8. Counsel investigated the claims and assessed potential damages. Id. at 9. Following mediation, both parties continued settlement discussions and ultimately reached the proposed settlement at issue here. Id.

On May 26, 2015, Plaintiff filed the present motion, asking the Court to grant preliminary approval of the settlement. ECF No. 33. The hearing on the motion for preliminary approval was held on July 9, 2015, at which the Court questioned the parties about the terms of the settlement agreement. ECF No. 37. On July 13, 2015, the Court ordered Plaintiff to provide supplemental briefing "addressing the total potential recovery if Plaintiff was to prevail on each of his claims." ECF No. 38. Plaintiff's counsel submitted a supplemental declaration on July 31, 2015. ECF No. 39.

### C. Settlement Agreement

The settlement agreement is attached as Exhibit 1 to the Declaration of Allison H. Goddard. See ECF No. 33-2. The key provisions are as follows:

As part of the settlement agreement, Advantage will provide $320,000 as a gross settlement. ECF No. 33-1 at 5. Attorneys' fees, service payments to class representatives, and administrative costs will be paid from the gross settlement fund. Id. at 4. Plaintiff's counsel seek up to $120,000 in attorneys' fees and costs, which would represent 37.5%[2] of the gross settlement amount. Id. The settlement provides for class representatives to each receive a $3,000 service award ($9,000 total). Id. Settlement administration costs are estimated at $59,888. Id. at 5-6. The parties agree to the appointment of KCC, LCC as the settlement administrator. Id. at 6. After subtracting these amounts, the net remaining funds will be distributed to class members. Id. at 4.

The settlement agreement defines the class as:

> All of Defendant's California-based temporary employees (referred to by Defendant in the ordinary course of business as its "Associates") during the relevant time period from four (4) years preceding the filing of the Complaint in the Action on April 17,

---

[2] Because class counsel seek to pay costs as well as fees from this total, and costs to date are $9,765, the requested fee would actually be closer to 34 percent of the settlement fund. ECF No. 33-1 at 15.

3

2014 up to and through the date on which the Court grants preliminary approval of this Settlement, if such approval is given.

ECF No. 33-2, Ex. 1 at 1.

Class members' recoveries are weighted according to the number or interviews they attended with Advantage's clients during the class period. ECF No. 33-1 at 4-5. This will be determined distributing a responsive postcard on which class members will be asked to state the number of interviews they attended (although limited to a number between one and five). Id. at 4. Class members can be compensated for up to five interviews, with each class member receiving an exact proportion of the net settlement based on the total number of interviews claimed. Id. If a class member does not respond within sixty days of mailing the class notice, the class member will be assumed to only have attended one interview. ECF No. 33-2, Ex. 2. Payments to class members will be allocated one-third as unpaid wages, one-third as unpaid interest, and one-third as unpaid penalties. ECF 33-1 at 5. The settlement administrator will issue IRS forms and Advantage will separately pay the payroll tax, withholdings, and contributions resulting from the settlement. Id.

This settlement provides for no reversion to Advantage; any settlement checks that are not cashed after 180 days will be distributed by the settlement administrator to the unclaimed property fund of the California State Controller's office. Id. at 7.

To be excluded or opt out of the settlement, class members must send a written opt-out request to the settlement administrator within sixty days of mailing the class notice. Id. Otherwise, class members can object to the settlement by sending a written objection to the settlement administrator, filing with Court, and serving on parties' counsel. Id.

Finally, Plaintiff Betancourt, Mr. Minor, and Mr. Quesada will release all known and unknown claims they may have against Advantage, with a waiver of California Civil Code section 1542. Id. Class members who do not opt out of the Settlement will release all claims that were or could have been asserted in the complaint. Id.

### D. Jurisdiction

The Court has jurisdiction over this action under 28 U.S.C. § 1332(d).

## II. Conditional Class Certification

Plaintiff asks the Court to conditionally certify the proposed class for the purposes of settlement pursuant to Federal Rule of Civil Procedure 23 subsections (a) and (b)(3).

Class certification under Federal Rule of Civil Procedure 23 is a two-step process. First, a plaintiff must demonstrate that the four requirements of Rule 23(a) are met: numerosity, commonality, typicality, and adequacy. "Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied." Wang v. Chinese Daily News, Inc., 709 F.3d 829, 833 (9th Cir. 2013) (quoting Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011)). Second, a plaintiff must establish that one of the bases for certification in Rule 23(b) is met. Here, Plaintiff invokes Rule 23(b)(3) and must establish that "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The party seeking class certification bears the burden of demonstrating by a preponderance of the evidence that all four requirements of Rule 23(a) and at least one of the three requirements under Rule 23(b) are met. See Wal-Mart, 131 S. Ct. at 2551.

When determining whether to certify a class for settlement purposes, a court must pay "heightened" attention to the requirements of Rule 23. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997). Indeed, "[s]uch attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." Id. (citations omitted).

As discussed below, Plaintiff has shown that Rule 23's requirements for certification of the putative class for settlement purposes are met.

**A.      Rule 23(a)(1)—Numerosity**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."

Plaintiff contends that this requirement is satisfied because the settlement class includes 8,401 members. ECF No. 33-1 at 17. The Court concludes that Plaintiff has satisfied his burden

to show that the number of putative class members is sufficiently numerous that their joinder would be impracticable.

### B.      Rule 23(a)(2)—Commonality

A Rule 23 class is certifiable only if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  For the purposes of Rule 23(a)(2), even a single common question is sufficient.  Wal-Mart, 131 S. Ct. at 2556 (internal quotations omitted).  The common contention, however, "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. at 2551.  "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." Id. (emphasis in original) (quotation omitted).

The Court finds that the proposed class satisfies the commonality requirement because the California Labor Code violation issues presented by Plaintiff's claims and Advantage's defenses apply to the class as a whole.

### C.      Rule 23 (a)(3)—Typicality

In certifying a class, courts must find that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992).  "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" Id. (quoting Schwartz v. Harp, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).

The Court finds that the proposed class representative, Plaintiff Juan Betancourt, is typical of the class he seeks to represent because he alleges he suffered the same injury, in the same manner, as the proposed class. ECF No. 33-1 at 18.  Plaintiff alleges that he completed the new hire paperwork, which created an employment relationship. ECF No. 1 ¶ 31.  He also alleges that

because of this relationship, Advantage committed the same wage-and-hour violation by failing to compensate him for his time interviewing with Advantage's clients. Id. ¶ 31. The claims of the entire class are based primarily on Advantage's uniform policy in failing to compensate temporary workers for wages during interviews with clients. Id. ¶¶ 40-42.

Plaintiff's motion states that like Plaintiff Juan Betancourt, Edgar Minor and Johnny Quesada completed Advantage's intake paperwork, became Advantage's employee, interviewed with Advantage's client, and were not compensated for their interview time. ECF No. 33-1 at 2. While Mr. Minor and Mr. Quesada may be appropriate class members, they are not currently named as Plaintiffs. The Court therefore declines to analyze the typicality of their claims to ensure that their interests align with the class's interests.

### D. Rule 23(a)(4)—Adequacy

"The adequacy of representation requirement . . . requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 462 (9th Cir. 2000). The requirement "'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a)." Amchem, 521 U.S. at 626 n.20 (1997) (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 158 n.13 (1982)). Among other functions, these requirements serve to determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Falcon, 457 U.S. at 158 n.13. Adequacy of representation requires two legal determinations: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998).

No evidence in the record suggests the proposed class representative or proposed class counsel have a conflict of interest with other class members. Plaintiff's counsel is qualified and competent, and has extensive experience prosecuting wage and hour class actions, including wage actions similar to the present case. See ECF No. 33-2 at 4. The Court finds that proposed class

counsel and proposed class representative have and will continue to prosecute this action vigorously on behalf of the class. The adequacy requirement is therefore satisfied.

### E.     Rule 23(b)(3)—Predominance and Superiority

To certify a Rule 23 damages class, the Court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem, 521 U.S. at 623. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." Hanlon, 150 F.3d at 1022 (quotation omitted).

Here, the Court finds that the common questions raised by Plaintiff's claims predominate over any questions affecting only individual members of the proposed class. In particular, Plaintiff alleges that Advantage's failure to classify class members as employees and consequent failure to compensate them for their time spent interviewing violated the California Labor Code. ECF No. 33-1 at 19. All class members were subject to the same practices. The predominance requirement is therefore satisfied.

Next, "[t]he superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." Hanlon, 150 F.3d at 1023.

Here, because common legal and factual questions predominate over individual ones, the Court finds that the judicial economy achieved through common adjudication makes a class action superior to any alternative procedures for adjudicating the claims of the members of the proposed class.

### F.     Class Definition

While not enumerated in Rule 23, "courts have recognized that 'in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable.'"

8

Vietnam Veterans of Am. v. C.I.A., 288 F.R.D. 192, 211 (N.D. Cal. 2012) (quoting DeBremaecker v. Short, 433 F.2d 733, 734 (5th Cir. 1970)). "[A] class definition is sufficient if the description of the class is 'definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member.'" Id. (quoting O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 311, 319 (C.D. Cal. 1998)).

The Court finds that the class definition contained in the settlement agreement satisfies this requirement. The class is defined as Advantage's California-based temporary employees during the time period of April 17, 2010 until the date of preliminary approval by the Court. ECF No. 33 at 16-17. Advantage is able to identify these class members through its electronic human resources database.

Because each element of Rules 23(a) and 23(b)(3) are satisfied, the Court finds that conditional certification of the proposed settlement class is appropriate.

### III.     Appointment of Class Representative and Class Counsel

Because the Court finds that named plaintiff Betancourt meets the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints him to be class representative.

When a court certifies a class, the court must appoint class counsel and must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). Additionally, a court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Plaintiff's counsel have thus far vigorously prosecuted this action by: filing Plaintiff's complaint and successfully defending against a motion to dismiss; investigating class members' potential claims; propounding and reviewing discovery; analyzing the information provided in discovery to assess the value of Plaintiff's claims; participating in a mediation session at arms-length that lasted more than twelve hours; and briefing the instant motion for preliminary

1   approval.  In addition, Plaintiff's counsel has prior experience prosecuting wage and hour class

2   actions.  ECF No. 33-2, ¶ 12.  For these reasons, the Court will appoint Plaintiff's counsel,

3   Patterson Law Group, as Class Counsel pursuant to Federal Rule of Civil Procedure 23(g).

## IV.     Preliminary Approval of Class Settlement

### A.     Legal Standard

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions.  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir.1992).  The settlement of a certified class action must be "fair, adequate, and reasonable."  Fed. R. Civ. P. 23(e)(2).  But, where the "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).  In these situations, settlement approval "requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)."  Dennis v. Kellogg Co., 697 F.3d 858, 864 (9th Cir. 2012) (citation and internal quotation marks omitted).  Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations."  In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 947 (9th Cir. 2011).

At a preliminary approval stage, the Court's task is to determine whether the settlement falls "within the range of possible approval."  In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (quotation omitted); see also MCL, 4th § 21.633 (explaining that courts "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.").  The Court looks to see if the settlement agreement

> (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval.

Harris v. Vector Mktg. Corp., No. C–08–5198 EMC, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29,

1    2011); see also In re Tableware Antitrust Litig., 484 F. Supp. 2d at 1079.  The proposed settlement

2    need not be ideal, but it must be fair and free of collusion, consistent with a plaintiff's fiduciary

3    obligations to the class.  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1027 (9th Cir. 1998)

4    (explaining that "[s]ettlement is the offspring of compromise; the question we address is not

5    whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and

6    free from collusion.").

7         The Court considers the settlement as a whole, rather than its components, and lacks the

8    authority to "delete, modify or substitute certain provision."  Hanlon, 150 F.3d at 1026 (quoting

9    Officers for Justice v. Civil Serv. Comm'n of San Francisco, 688 F.2d 615, 630 (9th Cir.1982)).

10   Rather, "[t]he settlement must stand or fall in its entirety."  Id.  Ultimately, the decision to approve

11   or reject a settlement proposal is committed to the sound discretion of the trial judge."  City of

12   Seattle, 955 F.2d at 1276.

13       **B.**    **Analysis**

14        Because the settlement was reached prior to class certification, the Court will apply "a

15   higher standard of fairness and a more probing inquiry than may normally be required under Rule

16   23(e)."  Dennis, 697 F.3d at 864.  Nonetheless, the Court concludes that its terms fall within the

17   range of possible approval and grants preliminary approval.

18           **1.**    **Non-Collusive Negotiations**

19        In examining the means by which the parties arrived at a settlement, the Court concludes

20   that the negotiations and agreement were non-collusive.  The stipulated settlement was reached

21   after the parties engaged in motion practice, exchanged discovery, and participated in mediation.

22   ECF 33-1 at 8-9.  In response to formal and informal discovery requests, Advantage provided

23   information necessary for Plaintiff to evaluate the strengths and weaknesses of claims and

24   potential damages.  Id. at 8.  Additionally, the parties reached material terms of the settlement after

25   arms-length negotiations with an experienced wage-and-hour mediator.  Id.  These assertions

26   support the conclusion that the settlement is non-collusive and likely to benefit the class members.

27   See, e.g., Harris, 2011 WL 1627973, at *8 (explaining that use of an experienced mediator

28   "suggests that the parties reached the settlement in a procedurally sound manner and that it was

11

not the result of collusion or bad faith by the parties or counsel").

Other signs support the conclusion that the settlement was not the product of collusion. The settlement does not contain a reversionary clause. All of the net settlement award will be distributed to the class and settlement money that goes uncashed will be distributed to the unclaimed property fund of the California State Controller's Office. ECF No. 33-3 at 7. See In re Bluetooth, 654 F.3d at 947 (discussing reversionary clauses as a sign of collusion). The settlement does not contain a clear sailing provision. See id. (discussing clear sailing provisions as another sign of collusion).

### 2.   Obvious Deficiencies

The settlement has no obvious deficiencies. During the hearings, the Court questioned counsel for both parties about the process of distributing the settlement to class members. The Court inquired about the information Advantage possessed regarding the number of interviews class members attended and whether a response card process was necessary. The Court also inquired about the settlement agreement's cap on compensation at five interviews per class member. Based on counsel's responses, it is clear that gathering information about interviews from class members is appropriate in light of Defendant's lack of records and capping compensation at give interviews is an appropriate part of a settlement process in which all class members are guaranteed to receive at least some compensation and because the overwhelming number of class members participated in fewer than five interviews.

### 3.   Preferential Treatment

Under this factor, the Court looks at whether the settlement agreement provides preferential treatment to any class member. Here, the settlement agreement identifies only one class with no sub-classes. All class members will have an opportunity to claim a *pro rata* share of the settlement fund.

The settlement agreement also authorizes Plaintiff Juan Betancourt, and individual class members Edgar Minor and Johnny Quesada, to seek service awards of up to $3,000 each for their contributions to the case. ECF No. 33-1 at 2. The Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not necessarily render a

settlement unfair or unreasonable.  See, e.g., Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 958-69 (9th Cir. 2009).  Neither Minor nor Quesada is a named plaintiff, and they may not be entitled to receive service awards, although the Court reaches no final decision on that question now.  The Court will evaluate the requests for service awards at the final approval hearing.

### 4. The Range of Possible Approval

Finally, the Court must consider whether the settlement agreement falls within the range of possible approval.  The court primarily looks at the value to class members of the settlement compared to their potential recovery in a successful litigation.  Harris, 2011 WL 1627973, at *10; see also In re Mego Fin. Corp. Sec. Litig., 213 F.3d at 459.

Plaintiff has adequately explained why a gross settlement amount of $320,000 is fair when compared to the total potential damages in the case.  Plaintiff states that class members will receive on average $15.60.  ECF No. 33-1 at 11.  Based on Advantage's records, class members have participated in approximately 22,310 interviews.  Id.  Based on an hourly wage of $11.25, Plaintiff estimates that the maximum wages that class members could recover is $250,988.  Id.  The gross settlement amount exceeds this figure and the net settlement amount is 52% of the wages class members would receive at trial should they prevail.  Id.  Plaintiffs also estimate that the maximum penalties class members could recover is $555,350 under California Labor Code section 226(e) and $2,494,132 under California Labor Code section 203.  Totaling the wages and penalties, the gross settlement amount represents 9.7% of the maximum amount of wages and penalties class members could receive at trial.

Although the class could recover substantial damages and penalties if the Court were to impose the maximum amount of potential labor penalties, Plaintiff makes a convincing case that such a result would be uncertain.  For one thing, Defendant's records regarding the number of interviews class members participated in are exceedingly poor.  For another, to be eligible for these penalties Plaintiff would have to prove willfulness, knowledge, and intentionality.  Id. at 12.  Moreover, although the Court denied Advantage's motion to dismiss, there is uncertainty in the law regarding Plaintiff's primary claim that class members were Advantage's employees and entitled to wages for their interview time.  Compare Sullivan v. Kelly Servs., Inc., No. C 08-3893

1    CW, 2009 WL 3353300 (N.D. Cal. Oct. 16, 2009) (holding an employment relationship was

2    created and that "work" time was compensable), with Gunawan v. Howroyd-Wright Empl.

3    Agency, No. SACV 13-01356-CJC, 2014 WL 539907 (C.D. Cal. Jan. 30, 2014) (holding that an

4    employment relationship was not created and time alleged as "work" was not compensable).

5       Under these circumstances, the Court finds that Plaintiff has adequately explained why a

6    gross settlement amount of $320,000 is fair, adequate, and reasonable in light of the strength of

7    Plaintiff's case, and the risk, expense, complexity, and likely duration of this litigation.

8       The Court also finds that the parties' agreement with respect to attorneys' fees and service

9    enhancement award for named Plaintiff Juan Betancourt falls within the range of possible

10   approval.

11      The settlement agreement authorizes Plaintiff's counsel to petition the court for up to

12   $120,000 in attorneys' fees and costs.  ECF No. 33-1 at 3.  While the requested fee, if awarded in

13   full, would represent 37.5% of the gross settlement amount.  The Court expresses no view at this

14   juncture regarding this percentage, except to say that it falls within the range of possible approval

15   The Court will evaluate the request for attorneys' fees at the final approval hearing, after the

16   motion for fees and costs, and the class has an opportunity to object.  Plaintiff should be mindful

17   of providing appropriate detail and documentation in connection with the motion for final

18   approval and motion for attorneys' fees and service enhancement awards.

19      For the foregoing reasons, the Court will preliminarily approve the class action settlement.

20   **V.    Conditional Approval of Notice Plan**

21      The class notice in a Rule 23(b)(3) class action must comport with the requirements of due

22   process.  "[T]he plaintiff must receive notice plus an opportunity to be heard and participate in

23   litigation, whether in person or through counsel."   The notice must be "the best practicable,"

24   "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of

25   the action and afford them an opportunity to present their objections."  Philips Petroleum Co. v.

26   Shutts, 472 U.S. 797, 812 (1985) (citations omitted).  "The notice should describe the action and

27   the plaintiffs' rights in it."  Id.  Rule 23(c)(2)(B) provides, in relevant part:

28         The   notice   must   clearly   and   concisely   state   in   plain,   easily

> understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Additionally, "an absent plaintiff [must] be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court." Id.

The parties propose to use KCC, LLC as settlement administrator. ECF No. 33-1 at 6. KCC will: send notice of the settlement by first class mail; perform one skip-trace procedure to attempt to identify current address for class members whose notices are returned undeliverable; mail reminder post cards to class members twenty days after the mailing of class notice; calculate the amounts that each claimant is entitled to recover; and distribute to class members their recoveries under the settlement. Id. at 6-7. In return, the parties propose to compensate KCC, LLC $59,888 from the gross settlement fund. Id. at 6. Advantage will pay any additional costs KCC incurs out of the gross settlement fund. Id. at 5-6.

The parties' proposed notice plan includes a mailed long-form notice combined with a claim form, and a follow-up postcard reminder. Id. The long-form notice will be mailed to all settlement class members, as identified by the last known address in Advantage's human resources database. Id. The notice provides background information describing the action, provides the class definition, informs the members of the nature and scope of the settlement, discloses the requested attorneys' fees and costs and class representative enhancement awards, discloses the estimated settlement administration fee, provides the opt out and objection procedures, and notifies class members of their rights to object to the settlement terms and be heard at the final settlement approval hearing. ECF No. 33-2, Ex. 2. It also provides the timeline for submitting claims, requesting exclusion, and objecting. Id. In addition, it provides Plaintiffs' counsel and KCC's address and telephone number. Id.

To effect notice, KCC will use known addresses of members of the settlement class that Advantage provides. ECF No. 33-1 at 6. If mailed notice is returned as undeliverable, KCC will

resend the notice and claim form to any forwarding address provided, or if no forwarding address is provided, will run a skip-trace to identify a current forwarding address. Id. Postcard notice will be sent as a reminder to class members twenty days after the initial mailing. Id. To opt-out of the settlement, putative class members must send a letter containing specified information to the settlement administrator. Id. at 7. To object to the settlement or to class counsel's application for attorneys' fees, costs, expenses, and service awards, class members must send a letter to the Clerk of this Court, class counsel, and Advantage's counsel. Id. All objections and requests for exclusion must be sent within sixty days from the mailing of the Notice. Id.

The Court finds the parties' notice plan comports with due process requirements. In addition, the Court will approve the form of the proposed notices, subject to the following alterations:

> 1. All forms of notice shall provide class members instructions as to how to access the case docket via PACER or in person at any of the locations of the District Court for the Northern District of California;
>
> 2. For a class member to request exclusion from the settlement, the only information the class member must provide in a letter to the settlement administrator is: (1) the class member's name and the last four digits of his or her Social Security number, (2) a statement that he or she wishes to be excluded from the settlement class in Betancourt v. Advantage Human Resourcing, Inc., Case No. 3:14-cv-01788-JST, and (3) his or her signature. Class members' telephone numbers, addresses, and other information is not required, as is currently indicated in the long-form notice;
>
> 3. Any objections to the settlement should be mailed only to the Court. Once received by the Court, the Clerk of the Court will file the objections on the Court's electronic filing system. As currently worded, the long-form notice requires objections to be sent to Plaintiffs' and Defendant's counsel, which is unnecessary, as electronic filing of an objection on the case docket constitutes service on the parties; and
>
> 4. Objectors will not be required to provide all of the information that is requested in the long form notice. See ECF No. 33-1, Ex. 2 at 4. Instead, objectors need only provide the information requested in the following proposed language:
>
>> You may object to the proposed settlement in writing by providing your full name, the basis for your belief that you are a member of the settlement class, the basis of your objection, and your signature. You may not ask the Court to order a larger or different settlement; the Court can only approve or deny the settlement. You may also

> appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for paying that attorney.
>
> All written objections and supporting papers must: (a) clearly identify the case name and number (<u>Betancourt v. Advantage Human Resourcing, Inc.</u>, Case No. 3:14–cv–01788–JST); (b) be submitted to the Court either by mailing them to Clerk of the Court for the United States District Court for the Northern District of California, 450 Golden Gate Avenue, Box 36060, San Francisco, CA 94102, or by filing them in person at any location of the United States District Court for the Northern District of California; and (c) be filed or postmarked on or before [insert date 60 days from the Class Notice mailing].

The parties may elect to use this format, or adopt a different format requesting the same, but not more, information.

## CONCLUSION

For the foregoing reasons, the Court hereby:

1. Grants preliminary approval of the settlement;

2. Conditionally certifies the proposed settlement class;

3. Appoints Juan Betancourt as class representative;

4. Appoints Patterson Law Group as class counsel; and

5. Approves the proposed notice program and the content of the notices, as well as the opt-out and objections procedures, with the modifications discussed above;

6. Adopts the following dates and deadlines:

| **Deadline** | **Action** |
| --- | --- |
| Fifteen (15) calendar days after the Court enters the Preliminary Approval Order | Defendant will provide to the Settlement Administrator a list identifying each Class Member, and stating the last known address of such Class Members that is readily accessible to Defendant in its electronic human resources database. |
| Thirty (30) calendar days after the Court enters the Preliminary Approval Order | The Settlement Administrator will mail the Class Notice to the Settlement Class. |
| Five (5) calendar days from return date of undeliverable Settlement Documents | The Settlement Administrator will skip-trace returned mail and re-mail. |
| Twenty (20) days following the mailing of the Class Notice | The Settlement Administrator shall send a reminder postcard |

| Sixty (60) days from the mailing date of the Class Notice | Settlement Class Members must postmark responses to the request for number of interviews |
|---|---|
| Sixty (60) days from the mailing date of the Class Notice | Settlement Class Members must postmark their opt-out notice or request from exclusion. |
| Sixty (60) days from the mailing date of the Class Notice | Settlement Class Members must postmark and file their written objections |
| Twenty one (21) calendar days prior to the Final Approval Hearing | Settlement Administrator will submit a list to Class Counsel and Defense Counsel of all timely, valid opt outs and requests for exclusion received from Class Members. |
| Seven (7) days prior to the Final Approval Hearing | Class Counsel shall provide the Court with a declaration by the Settlement Administrator specifying the due diligence it has undertaken with regard to the mailing of the Class Notice. |

7.   Sets the final approval hearing for January 28, 2016 at 2:00 p.m., in Courtroom 9, 19th Floor, 450 Golden Gate Avenue, San Francisco, California.  Class Counsel's memorandum of points and authorities in support of final approval, responses to any objections, and application for attorneys' fees, costs, expenses, and service awards shall be filed by December 23, 2015.

**IT IS SO ORDERED.**

Dated: August 28, 2015

_____
JON S. TIGAR
United States District Judge

18