UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN BETANCOURT,<br><br>    Plaintiff,<br><br>    v.<br><br>ADVANTAGE HUMAN RESOURCING, INC.,<br><br>    Defendant. | Case No. 14-cv-01788-JST<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**<br><br>Re: ECF Nos. 41, 42 |

Before the Court are Plaintiff Juan Betancourt's unopposed Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees, Costs, and Service Awards. ECF Nos. 41, 42. No class members have objected to the settlement, and five class members have opted out. See ECF No. 42-3, Shawver Decl. ¶¶ 16–17. The Court held a fairness hearing on January 28, 2016. For the reasons discussed below, the Court will grant the motion for final approval and the motion for attorneys' fees, costs, and service awards.

**I.    BACKGROUND**

    **A.    Factual Background**

Defendant Advantage Human Resourcing, Inc. is a temporary employment agency that places candidates with its clients. ECF No. 1 ¶ 14. Advantage interviews prospective workers, sends them to "new hire" orientation, has new hires sign a form that acknowledges that the parties are entering into an employment arrangement, and requires them to complete traditional employment paperwork, including W-4 and I-9 forms. Id. ¶¶ 17–20. Advantage then sends eligible candidates to interview for temporary employment with its clients. Id. ¶ 22.

Plaintiff Juan Betancourt completed Advantage's intake and orientation process and agreed to become an Advantage temporary employee in late 2011. Id. ¶ 31. Advantage then sent

Betancourt to interview with one of its clients and complete additional materials for a temporary position. Id. ¶ 32. Betancourt was not compensated for the time he spent interviewing with Advantage's client. Id. ¶ 37.

### B. Procedural History

On April 17, 2014, Betancourt filed this putative class action against Advantage, on behalf of former California-based temporary employees who were not compensated for the time they spent interviewing with Advantage's clients. ECF No. 1. Because Advantage maintains complete control over all aspects of the interview process, Betancourt argues that Advantage's failure to compensate its employees for the time spent participating in interviews and orientation for Advantage's clients violates the California Labor Code and California Business & Professions Code. Betancourt alleges claims for: (1) failure to pay minimum wages; (2) failure to provide proper wage statements; (3) failure to pay wages upon termination; (4) unlawful payment of lower wages; and (5) unfair competition. Id. Betancourt seeks damages, penalties, restitution, and other equitable relief. Id.

Advantage filed a motion to dismiss on May 14, 2014.[1] ECF No. 12. The Court denied the motion on September 3, 2014, concluding that Betancourt adequately alleged his employment status with Advantage and the compensable nature of the time spent interviewing with Advantage's clients. ECF No. 24.

Betancourt's counsel then engaged in both formal and informal discovery, including the exchange of interrogatories, requests for production, and requests for admissions. Id. at 14. Counsel investigated the claims and assessed potential damages. Id. at 15. The parties subsequently participated in a full-day mediation on November 11, 2014, with Susan Haldeman, a class action and wage-and-hour mediator. ECF No. 33-1 at 15. The parties agreed to the material terms of the proposed settlement that is now before the Court. Id.

On May 26, 2015, Betancourt filed a motion seeking preliminary approval of the

---

[1] After Advantage filed this motion, Plaintiff's counsel agreed to represent two class members, Edgar Minor and Johnny Quesada, but did not amend the Complaint to add them as named plaintiffs. See ECF No. 42-1 at 5 n.1.

1    settlement. ECF No. 33. The hearing on the motion for preliminary approval was held on July 9,
2    2015, at which the Court questioned the parties about the terms of the settlement agreement. ECF
3    No. 37. On July 13, 2015, the Court ordered Betancourt to provide supplemental briefing
4    "addressing the total potential recovery if Betancourt was to prevail on each of his claims." ECF
5    No. 38. Counsel submitted a supplemental declaration on July 31, 2015. ECF No. 39.

     In its August 28, 2015 Order, the Court: (1) granted preliminary approval of the parties'
     proposed settlement agreement; (2) conditionally certified the putative class for settlement
     purposes; (3) appointed Plaintiff Betancourt as class representative; (4) appointed Patterson Law
     Group as class counsel; (5) approved the parties' proposed notice program as well as the content
     of the notices; and (6) approved and ordered that the proposed opt-out and objection procedures be
     undertaken. ECF No. 40 at 17.

     On November 10, 2015, Betancourt moved for attorneys' fees, costs, and service awards.
     ECF No. 41. On December 22, 2015, Betancourt moved for final approval of the class action
     settlement. ECF No. 42.

     **C.   Settlement Agreement**

     The settlement class is defined as:

    > All of Defendant's California-based temporary employees (referred
    > to by Defendant in the ordinary course of business as its
    > "Associates") during the relevant time period from four (4) years
    > preceding the filing of the Complaint in the Action on April 17,
    > 2014 up to and through the date on which the Court grants
    > preliminary approval of this Settlement, if such approval is given.

     ECF No. 33-2, Ex. 1 at 1 ¶ 1.

     Advantage will provide $320,000 as a gross settlement. ECF No. 42-1 at 6. Attorneys'
     fees and costs, service payments to class representatives, and administrative costs will be paid
     from the gross settlement fund. Id. The settlement permits class counsel to seek up to $120,000 in
     attorneys' fees and costs. Id. The settlement provides for Juan Betancourt, Edgar Minor, and
     Johnny Quesada to each receive up to $3,000 in service awards ($9,000 total). Id. The settlement
     also provides that the settlement administrator, Kurtzman Carson Consultants LCC ("KCC"), will
     receive up to $59,888 to cover administrative costs. Id. After subtracting these amounts, the net

3

1  remaining funds will be distributed to class members. Id. at 6–7.

2  Class members' recoveries are weighted according to the number of interviews they
3  attended with Advantage's clients during the class period. Id. at 6. Class members can be
4  compensated for up to five interviews, with each class member receiving an exact proportion of
5  the net settlement based on the total number of interviews claimed. Id. If a class member did not
6  respond by postcard to the class notice, the class member is assumed to have attended only one
7  interview. See ECF No. 33-2, Ex. 2. The settlement provides for no reversion to Advantage; any
8  settlement checks that are not cashed after 180 days will be distributed by the settlement
9  administrator to the unclaimed property fund of the California State Controller's office. ECF No.
10 33-2, Ex. 1 at 15.

11 Finally, Betancourt, Mr. Minor, and Mr. Quesada will release all known and unknown
12 claims they may have against Advantage, with a waiver of California Civil Code section 1542. Id.
13 Class members who do not opt out of the Settlement will release all claims that were or could have
14 been asserted in the Complaint. Id.

### D. Jurisdiction

The Court has jurisdiction over this action under 28 U.S.C. § 1332(d).

## II. FINAL APPROVAL OF THE SETTLEMENT

### A. Legal Standard

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." FED. R. CIV. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1025 (9th Cir. 1998). In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." Id. at 1026. In order to assess a settlement proposal, the district court must balance a number of factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004).

Settlements that occur before formal class certification also require a higher standard of fairness. In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000). In reviewing such settlements, in addition to considering the above factors, the court also must ensure that "the settlement is not the product of collusion among the negotiating parties." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946–47 (9th Cir. 2011).

**B.     Analysis**

**1.     Notice of the Settlement**

Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." "The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).

The court conditionally approved the parties' proposed plan for providing notice to the class.[2] ECF No. 40. The parties have shown that the class administrator carried out the notice plan approved by the court by preparing the class list, mailing notice to the class members via first class mail, and performing address traces to re-mail the notice to class members whose mail was returned undeliverable. ECF No. 42-1 at 8; ECF No. 42-3, Shawver Decl. ¶¶ 2–5; see also ECF No. 62 at 13–14. The class administrator also sent out reminder postcards and answered calls from class members. Id. ¶¶ 10, 15. The settlement administrator mailed 9,584 notice packets, of which 1,592 were returned without forwarding addresses. Id. ¶ 12. New addresses were found for 1,273 individuals, and notices were mailed using the new addresses. Id. As of December 18, 2015, 562 of the 9,584 notices (or 5.9%) remain undeliverable due to the inability to identify a

---

[2] The Court approved the form of the proposed notices subject to the parties altering the notice by: (1) providing instructions for class members instructions on how to access the case dockets via PACER or in person; (2) instructing class members on what information to provide to request exclusion from the settlement; (3) requiring that objections be mailed only to the Court; and (4) instructing class members on what information to provide to object to the settlement. ECF No. 40 at 16–17.

current address.³ Id. ¶ 14.

In light of the above, the Court finds that the parties have sufficiently provided the best practicable notice to the settlement class members. See Lundell v. Dell, Inc., Case No. 05-3970 JWRS, 2006 WL 3507938, at *1 (N.D. Cal. Dec. 5, 2006) (holding that notice sent via email and first class mail constituted the "best practicable notice" and satisfied due process requirements); see also Boring v. Bed Bath & Beyond, No. 12-CX-05259-JST, 2014 WL 2967474, at *1 (N.D. Cal. June 30, 2014) (finding adequate notice where parties implemented approved notice plan and only "twenty-seven of the 1,374 class notices [representing 1.97% of the notices initially sent] were returned undeliverable after a second attempt and a skip trace").

### 2. Fairness, Adequacy, and Reasonableness of the Settlement

#### a. The Strength of Plaintiff's Case

The first Churchill factor the Court takes into consideration is the strength of Plaintiff's case. See Churchill Village, 361 F.3d at 575. Approval of a class settlement is appropriate when "there are significant barriers plaintiffs must overcome in making their case." Chun–Hoon v. McKee Foods Corp., 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).

Here, Betancourt acknowledges that if the settlement is not approved, he could encounter significant obstacles in establishing his claims. As the Court noted in its Order denying Advantage's motion to dismiss, courts have examined the claims on materially identical facts but reached opposite conclusions. ECF No. 24 at 4. While Betancourt is confident in the merits of his claims, he stresses that even if the Court entered judgment in his favor, the decision could be overturned on appeal. This acknowledged weakness weighs in favor of approving the settlement.

#### b. The Risk of Continued Litigation

The second factor focuses on the risks, expense, complexity, and projected duration of the litigation. See Churchill Village, 361 F.3d at 575. Difficulties and risks in litigating weigh in

---

³ Class members have submitted 903 interview forms, of which 253 claimed to have attended one interview, 208 claimed two interviews, 145 claimed three interviews, 84 claimed four interviews, and 213 claimed five interviews. ECF No. 42-3, Shawver Decl. ¶ 18. For purposes of administering the settlement, class members who did not submit interview forms are assumed to have attended one interview.

6

favor of approving a class settlement. See Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 966 (9th Cir. 2009).

This factor supports granting final approval of the settlement because if the parties did not settle, Betancourt would have to proceed through class certification, demonstrate class-wide liability, and establish damages for class members. ECF No. 42 at 9; see Moore v. Verizon Communications Inc., C 09–1823 SBA, 2013 WL 4610764, at *5 (N.D. Cal. Aug. 28, 2013) (finding that the strength of plaintiff's case favored settlement because plaintiff admitted that it would face hurdles in establishing class certification, liability, and damages).

### c. The Risk of Maintaining Class Action Status

Third, the Court considers the risk of maintaining class action status through the trial of this case. See Churchill Village, 361 F.3d at 575. The potential difficulties associated with maintaining class certification in this case weigh in favor of approving the settlement. See McKee Foods, 716 F. Supp. 2d at 851 (holding that this factor supports approving a settlement when both parties acknowledge the possibility of decertification).

If the Court did not approve this settlement, Advantage would challenge certification. Advantage contends, for example, that "the hiring process for each class member varied according to the hiring office location, client preferences, and the type of position for which the class member was hired." ECF No. 42-1 at 9. Betancourt maintains that Advantage created an employer-employee relationship with the class members before arranging interview, but concedes that "there still exists a risk that class action status could not be maintained throughout litigation." Id. at 9–10. The risk of maintaining class action status favors settlement.

### d. The Settlement Amount

Under the fourth factor, the Court analyzes the amount offered in settlement. See Churchill Village, 361 F.3d at 575. To assess whether the amount offered is fair, the Court may compare the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation. In re Mego Fin. Corp. Sec. Litig., 213 F.3d at 459. It is "well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." In re Omnivision Techs Inc., 559 F. Supp.

2d 1036, 1042 (N.D. Cal. 2008).

The Court previously concluded that the settlement was within the range of possible approval. ECF No. 40 at 13–14. The gross settlement amount is $320,000, and on average, class members will receive $15.60. See ECF No. 42-1 at 10. Based on Advantage's records, class members have participated in approximately 22,310 interviews. Id. Based on an hourly wage of $11.25, Betancourt estimates that the maximum wages that class members could recover is $250,988. Id. The gross settlement amount actually exceeds this figure, and the net settlement amount is 52% of the wages class members would receive should they prevail at trial. Id. $320,000 also represents approximately 9.7% of the total maximum potential recovery that class members would be entitled to if they prevailed on all claims.[4] Id. The Court finds that this figure is "within the range of reasonableness" in light of the risks and costs of litigation. See, e.g., Stovall-Gusman v. W.W. Granger, Inc., No. 13-CV-02540-HSG, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (concluding that a settlement providing 10% of the potential recovery was within the range of reasonableness).

### e.  The Extent of Discovery and the Stage of the Proceedings

This fifth factor examines the extent of discovery the parties have completed and the current stage of the litigation to evaluate whether "the parties have sufficient information to make an informed decision about settlement." Linner v. Cellular Alaska P'ship, 151 F.3d 1234, 1239 (9th Cir.1998). "In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." In re Mego Fin. Corp. Sec. Litig., 213 F.3d at 459 (citation omitted).

Here, Betancourt asserts that although the case settled "relatively early in the proceedings, the settlement is the product of substantial investigative effort." ECF No. 42-1 at 10. Counsel investigated Betancourt's potential claims and successfully opposed Advantage's motion to dismiss. Id.; see also ECF No. 24. Thereafter, counsel propounded and Advantage responded to formal discovery requests. ECF No. 42-1 at 10. Counsel also conducted additional investigations

---

[4] The total maximum potential recovery is so much higher than the maximum wages figure because the potential for statutory penalties under the California Labor Code.

to research Advantage's contentions that Betancourt's experience was atypical of other class members and interviewed additional class members. Id. at 10–11. Counsel also requested and received informal discovery from Advantage to prepare for the mediation. Id.

The Court finds that the parties conducted sufficient discovery to make an informed decision regarding the settlement's adequacy. See In re Omnivision, 559 F. Supp. 2d at 1042 (finding the parties were sufficiently informed about the case prior to settling because they engaged in discovery, took depositions, briefed motions, and participated in mediation).

#### f.  The Experience and Views of Counsel

The sixth factor looks at the experience and views of counsel. See Churchill Village, 361 F.3d at 575. "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." In re Omnivision, 559 F. Supp. 2d at 1043 (citation omitted).

Counsel has demonstrated that they are sufficiently informed about the current dispute and that they have prosecuted numerous consumer and wage-and-hour class actions. See ECF No. 42-1 at 11. No party has provided the Court with any evidence contradicting the notion that class counsel's recommendations are reasonable. In light of the foregoing, class counsel's support for the settlement weighs in favor of approving the settlement. See, e.g., In re Omnivision, 559 F. Supp. 2d at 1043 (finding class counsel's recommendation in favor of settlement to be presumptively reasonable because they demonstrated knowledge about the case and securities litigation in general).

#### g.  The Presence of a Governmental Participant

Because there is no governmental entity involved in this litigation, this factor is inapplicable.

#### h.  The Reaction of Class Members

Under the final factor, class members' positive reaction to a settlement weighs in favor of settlement approval. See Churchill Village, 361 F.3d at 575. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." In re Omnivision, 559 F. Supp. 2d at 1043 (citation omitted).

In this case, of 9,584 class members, only 5 (0.05%) have opted out of the settlement and none have objected. ECF 42-1 at 1; ECF No. 42-3, Shawver Decl. ¶ 16. Given the class members' positive reaction, the Court finds that the settlement is favorable to the class members. See e.g., McKee Foods Corp., 716 F. Supp. 2d at 852 (finding that a 4.86% opt-out rate strongly supported approval); Churchill Village LLC v. Gen. Elec., 361 F.3d 566, 577 (9th Cir. 2004) (holding that approval of a settlement that received 45 objections (.05%) and 500 opt-outs (.56%) out of 90,000 class members was proper).

### 3. The Absence of Collusion

Because this settlement was reached prior to class certification, the Court must also examine the settlement for evidence of collusion with a higher level of scrutiny. In re Bluetooth, 654 F.3d at 946. In conducting such an examination, courts must be "particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiation." Id. Signs of collusion include: (1) a disproportionate distribution of the settlement fund to counsel; (2) negotiation of a "clear sailing provision"; and (3) an arrangement for funds not awarded to revert to defendant rather than to be added to the settlement fund. Id. at 947. If "multiple indicia of possible implicit collusion" are present, a district court has a special "obligat[ion] to assure itself that the fees awarded in the agreement were not unreasonably high." Id. (citing Staton v. Boeing Co., 327 F.3d 938, 965 (9th Cir. 2003).

As to the first factor, in common fund settlements, the Ninth Circuit sets a "benchmark" fee award at 25% of the recovery obtained. See In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 949 (9th Cir. 2015); In re Bluetooth Headset Prods. Liab. Litig., 645 F.3d 935 (9th Cir.2011). As discussed in further detail in Secion IV.B of this Order, several factors support an upward departure from the benchmark. The Court finds that 34.3% is not a disproportionate amount.

As to the second factor, the settlement agreement contains a clear sailing provision. The agreement states "Class Counsel may apply for, and Defendant will not oppose, an award of attorneys' fees and costs in an amount up to $120,000, all of which shall be paid exclusively from

10

the Gross Settlement Amount . . . ." ECF No. 33-2, Ex. 1 at 16. "Although clear sailing provisions are not prohibited, they 'by [their] nature deprive . . . the court of the advantages of the adversary process' in resolving fee determinations and are therefore disfavored." In re Bluetooth, 654 F.2d at 949 (quoting Weinberger v. Great Northern Nekoosa Corp., 925 F.3d 518, 525 (1st Cir. 1991)). When "confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefits to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested." Id. at 948 (citing Staton, 327 F.3d at 954).

However, a "clear sailing provision does not signal the possibility of collusion where, as here, Class Counsel's fee will be awarded by the Court from the same common fund as the recovery to the class." In re High-Tech Employee Antitrust Litigation, 11-cv-02509-LHK, 2015 WL 5158730, at *14 (N.D. Cal. Sep. 2, 2015) (internal quotations omitted) (citing Rodriguez v. West Publ'g Corp., 563 F.3d 948, 961 n.5 (9th Cir. 2009)); see also In re Bluetooth, 654 F.3d at 947 (warning of "'clear sailing' arrangement[s] providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class"). Here, Class Counsel did not negotiate fees separate and apart from class funds. This factor therefore does not weigh against settlement approval.

As to the third factor, there is no reversion clause whereby unpaid attorneys' fees would revert back to the defendant rather than to the class. In re Bluetooth, 654 F.3d at 949. All of the net settlement award will be distributed to the class and settlement money that goes uncashed will be distributed to the unclaimed property fund of the California State Controller's Office. ECF No. 33-3 at 7.

After weighing the appropriate factors and examining the settlement for evidence of collusion, the Court finds the settlement fair, reasonable, and adequate.

### III.   SETTLEMENT ADMINISTRATION COST

KCC estimates that its costs to administer this settlement will eventually total $70,000, but requests approval for payment of only $59,888. ECF No. 42-3, Shawver Decl. ¶¶ 19–20. Shared

among the identified 9,584 class members, this amounts to $6.24 per class member.

Courts regularly award administrative costs associated with providing notice to the class. See, e.g., Odrick v. Union Bancal Corp., No. C 10-5565 SBA, 2012 WL 6019495, at *7 (N.D. Cal. Dec. 3, 2012). The Court concludes that these costs are reasonable and incurred for the benefit of the class.

## IV.   ATTORNEYS' FEES

### A.   Legal Standard

Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." FED. R. CIV. P. 23(h). "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." In re Bluetooth, 654 F.3d at 942; see Lealao v. Beneficial California, Inc., 82 Cal. App. 4th 19, 27 (2000) ("Despite its primacy, the lodestar method is not necessarily utilized in common fund cases."). "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." In re Bluetooth, 654 F.3d at 941. "Because the benefit to the class is easily quantified in common-fund settlements," courts can "award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." Id. at 942.

"[E]ven though a district court has discretion to choose how it calculates fees . . . it abuses that discretion when it uses a mechanical or formulaic approach that results in an unreasonable reward." In re Bluetooth, 654 F.3d at 944 (internal quotation marks omitted). Thus, the Ninth Circuit has "encouraged courts to guard against an unreasonable result by cross-checking their calculations against a second method." Id.

### B.   Analysis

The settlement fund totals $320,000, and class counsel seeks $109,687.29 in attorneys' fees. Class counsel has spent 235 hours prosecuting this action and claims that the total lodestar is

1    $151,725. ECF No. 41-1 at 7. Plaintiff's motion and Allison Goddard's declaration both discuss

2    the hours spent on the case and include descriptions for each task completed. See ECF No. 41-1 at

3    9–10; ECF No. 41-2, Goddard Decl. ¶¶ 9–12. Counsel cite to other cases, where the suggested

4    billing rates have been approved, to support the billing rates in this action.[5] Id. Having reviewed

5    counsel's submissions, the Court finds that the billing rates and hours billed by the attorneys are

6    reasonable and will them to calculate the lodestar amount.

| Attorney | Billing Rate | Number of Hours | Amount |
|---|---|---|---|
| Allison Goddard | $750 | 99.8 | $74,850 |
| James Patterson | $750 | 69.8 | $52,350 |
| Elizabeth Favret | $375 | 65.4 | $24,525 |
|  |  | 235 | $151,725 |

Class counsel requests an award of $109,678.29, a sum which represents only 72 percent of their lodestar fees of $151,725. This contrasts with the majority of class settlements, in which the fees awarded are typically greater than, or a multiple of, counsel's lodestar. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1051 n.6 (noting that the majority of class action settlements approved had fees multipliers that ranged between 1.5 and 3).). On these facts, the requested award would not "yield windfall profits for class counsel in light of the hours spent on the case." In re Bluetooth, 654 F.3d at 942. The Court concludes that counsel is entitled to an award of attorneys' fees in the amount of $109,678.29.

The Court next cross-checks the fee requested against the percentage award. The settlement fund totals $320,000, and class counsel seeks fees amounting to 34.3% of the fund.

When using a percentage-of-recovery method, "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." In re Bluetooth, 654 F.3d at 942 (citations omitted). Although the requested amount exceeds the 25% benchmark, counsel argues that the

---

[5] The reasonable hourly rate for computing the lodestar amount is based on the "prevailing market rates in the relevant community." Gonzalez v. City of Maywood, 729 F.3d 1196, 1205 (9th Cir. 2013). In the present case, "the relevant community is the Northern District of California where reasonable rates for partners range from $560 to $800, associates range from $285 to $510, and paralegals and litigation support staff range from $150 to $240." PetSmart, 2015 WL 5439000, at *12. The billing rates are within the range approved in this district.

13

amount is reasonable based on the following factors: "(1) Plaintiff's statutory right to attorney fees for vindication of rights under wage and hour statutes; (2) the risk Plaintiff's counsel took by pursuing this case on a pure contingency basis; (3) the reasonableness of the lodestar amount; and (4) Plaintiff's voluntary reduction of the lodestar amount by 28% under the settlement." ECF No. 41-1 at 13.

Given the results achieved, where average individual recovery for attending an interview exceeds the average hourly rate, and the risks involved, the Court finds the attorneys' fee award reasonable. Finally, "the lack of objection from any Class Member supports the attorneys' fee award." In re Immune Response, 497 F.Supp. 2d 1166, 1177 (S.D. Cal. May 31, 2007).

After careful review of class counsel's declaration and filings, and balancing the relevant factors, the Court concludes that an attorneys' fee award of $109,687.29 (representing 34.3% of the settlement fund) is fair and reasonable.

## V.     COSTS

### A.     Legal Standard

An attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994) (citation omitted). To support an expense award, the plaintiff should file an itemized list of their expenses by category and the total amount advanced for each category, allowing the Court to assess whether the expenses are reasonable. Wren v. RGIS Inventory Specialists, No. C-06-05778 JCS, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011), supplemented, No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

### B.     Analysis

Class Counsel states it has incurred $10,312.71 in costs and provides a list of costs incurred during this litigation, separated by category. ECF No. 41-2, Goddard Decl. ¶ 13. The expenses consist of the following costs: court fees, mediation costs, postage and courier costs, and other miscellaneous expenses. The Court finds that the $10,312.71 cost request is reasonable.

## VI. SERVICE AWARDS

### A. Legal Standard

"Incentive awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Rodriguez, 563 F.3d at 958–59 (internal citation omitted). Courts evaluate incentive awards individually, "using relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation." Staton, 327 F.3d at 977 (citation and internal quotations and alterations omitted). Indeed, "courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." Radcliffe v. Experian Info. Solutions, Inc., 715 F.3d 1157, 1164 (9th Cir. 2013).

### B. Analysis

The Settlement Agreement authorizes the named plaintiff, Juan Betancourt, as well as two class members, Edgar Minor and Johnny Quesada, to seek Court approval of a service award for their work in this case. See ECF No. 33-2, Ex. 1 at 16–17. Betancourt now requests awards of $3,000 each for himself, Mr. Minor, and Mr. Quesada. ECF No. 41-1 at 14–15.

Betancourt argues that the inventive awards are appropriate in the instant action because Betancourt, Minor, and Quesada "have been actively involved in the litigation." ECF No. 41-1 at 14. Each worked with counsel while counsel investigated and confirmed Advantage's hiring and interview practices. ECF No. 42-2, Goddard Decl. ¶ 4. Betancourt, Minor, and Quesada state that they have "consulted with [] counsel on numerous occasions regarding Advantage's hiring process and assisted counsel in requesting and responding to discovery." ECF No. 33-3, Betancourt Decl. ¶ 3; ECF No. 33-4, Minor Decl. ¶ 3; ECF No. 33-5, Quesada Decl. ¶ 3.

The Court will award Betancourt, Minor, and Quesada the requested incentive payments. See, e.g., Wren, 2011 WL 1230826, at *36 (noting that ample case law finding $5,000 to be a reasonable amount for an incentive payment). The award of $3,000 each is appropriate to

compensate Betancourt, Minor, and Quesada for a multitude of reasons. First, the Court acknowledges the time and effort undertaken by Betancourt, Minor, and Quesada to advance the litigation, and their work in assisting counsel investigate and develop facts and issues in the case. The Court also recognizes that their work directly benefitted the class. The Court also notes that Betancourt, Minor, and Quesada faced potential risks as a result of pursuing this case against Advantage, including reputational risks. Finally, although Edgar Minor and Johnny Quesada were not named plaintiffs in this action, the Court concludes that this does not preclude them receiving service awards. See id. at *31–34 (awarding an incentive payment to a class member). Both Minor and Quesada made active efforts in the case and the notice given to class members noted that Minor and Quesada would apply for class awards. Finally, no class members objected to the requested service awards. ECF No. 41-1

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. For the reasons set forth in its August 28, 2015 Order, the Court confirms its certification of the class for settlement purposes only.

2. The Court grants final approval of the proposed settlement.

3. The Court grants $59,888 in settlement administration costs to be paid from the settlement fund.

4. The Court grants Plaintiff's counsel $109,684.29 in attorneys' fees.

5. The Court grants Plaintiff's counsel $10,312.71 in costs.

6. The Court grants incentive awards of $3,000 each to Juan Betancourt, Edgar Minor, and Johnny Quesada.

7. Class members who asked to opt out of the settlement are excluded from the class.

8. The Court retains continuing jurisdiction over this settlement solely for the purposes of enforcing this agreement, addressing settlement administration matters, and addressing such post-judgment matters as may be appropriate under Court rules and applicable law.

/ / /

/ / /

9. Judgment is hereby entered on the terms set forth above. The clerk shall close the file.

IT IS SO ORDERED.

Dated: January 28, 2016



JON S. TIGAR
United States District Judge